Coös,
Nov. 5, 1907.

### HAMEL v. BURGESS SULPHITE FIBRE CO.

In an action of negligence against an employer, certain evidence deemed to conclusively establish that the injuries complained of resulted from the plaintiff's failure to definitely ascertain the condition of machinery and appliances, knowing such information to be essential to his safety.

CASE, for personal injuries sustained by the plaintiff while in the defendants' employ. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1906, of the superior court by *Stone*, J., upon the defendants' exceptions to the denial of their motions for a nonsuit and the direction of a verdict in their favor.

In that section of the defendants' mill where the plaintiff worked there were six distinct lines of screens, constituting a part of a paper machine. The screens were boxes four or five feet wide and from two to four feet deep, which stood on legs and were placed in lines from fifty to sixty feet long. There were spaces a foot or more in width between the lines. The screens were operated by shafting which extended beneath the center of each line and was located three feet below the boxes. At the lower end of each shaft was a pulley, called the driven pulley. When a shaft was dead this pulley did not revolve, and the screens were motionless. Different belts connected each driven pulley to a driving pulley attached to an overhead power shaft. There was a large window over the screens, and both sets of pulleys could be readily seen. It was somewhat dark on the day of the accident, and the windows were more or less dirty.

The plaintiff was one of the "screen men," whose duty it was, when a screen stopped, to go between the screens, attach a Stilson wrench to the dead shaft, and press upward or downward according as the shaft was to revolve to the right or left, while other men at the lower end of the line replaced the belt upon the driven pulley. The plaintiff was injured while at work between two lines of screens, the circumstances of the accident being sufficiently stated in the opinion.

*William H. Paine*, for the plaintiff.

*Merrill & Merrill* (of Maine), for the defendants.

BINGHAM, J. At the time he received his injury the plaintiff

had worked in the defendants' mill for three years, and upon and
about that part of a paper machine known as the screens for
eighteen months. He was a young man of average intelligence
and possessed of all his faculties. It was his duty to assist in
starting up the shafts which run beneath the screens, when for
any reason they stopped. This work required him to go between
the screens and attach a wrench to the dead shaft, and lift or
press down upon the wrench, according as the top of the shaft
was to revolve from or toward him. He had done this work as
occasion demanded throughout the latter period of his employ-
ment, and was fully acquainted with the method to be pursued in
its performance. On the day of the accident he was notified by
his boss that a screen was down on his section, and to take a
wrench and assist in starting up the shaft. It does not appear
that he inquired or was told which of the six lines of shafting
that operated the screens upon which he worked was dead. He
saw his boss with other men working at the lower end of the
screens between No. 2 and No. 3 lines of shafting, and for this or
some other reason entered the space between them. No. 2 shaft
was dead, but No. 3 was in motion. They were about five feet
apart, and the space in which he had to walk in going to do this
work was between them. He says that he entered this space by
climbing over the screens, instead of entering at the lower end
where the men were at work, as he thought his boss was mad at
him; and that as he went between the screens, a belt that drove
one of the shafts was beneath his feet and he saw the men pulling
it up. By inquiry, he could then have learned which shaft was
dead, or have ascertained that fact by looking at the driven pul-
leys upon the ends of the shafts. The belt that supplied the
power from the shafting above to the driven pulley upon No. 3
shaft must have been in plain sight and in operation, for No. 3
shaft was then revolving; and had the plaintiff looked at this belt,
he would in this way have learned that No. 3 shaft was in motion.
He also says that he looked at the screens before going beneath
them, to determine which shaft was in motion, but could not tell;
that it is difficult to tell whether screens are in motion when they
are filled with material as these were; that after going beneath
the screens he looked and saw the shafts; that on account of the
want of sufficient light he could not determine by looking at them
whether either was at rest, nor by listening, on account of the
noise. He knew, however, that it was dangerous to attach a
wrench to a moving shaft, and that if he did so he was liable to be
injured. He knew, when beneath the screens, that it was not
sufficiently light or sufficiently quiet for him to determine, either
by looking at the shafts or by listening, whether No. 2 or No. 3

was at rest, and that he did not know which was. He then knew that by inquiring of the men, or by going a few feet and looking at the driven pulleys, he could definitely ascertain which shaft was at rest. But notwithstanding he knew he was ignorant of what was essential to his safety, he placed his wrench upon No. 3 shaft, and was injured. The fact that he and the other men were in a hurry to start up the screens is of no consequence, in view of his failure to inform himself of what he knew was indispensable to his safety. The evidence shows that he was careless when his duty required him to be careful, and the jury were not warranted in drawing the inference that they did from it.

*Exceptions sustained.*

All concurred.